[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 17, 2006
THOMAS K. KAHN
CLERK

No. 06-11668
Non-Argument Calendar
_____

Agency No. A79-443-264

KAKHA MEZVRISHVILI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(October 17, 2006)**

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

The main issue presented in this petition for review is whether the

Immigration Judge and the Board of Immigration Appeals (BIA) gave reasoned

consideration to the application for asylum of Kakha Mezvrishvili, a citizen of the

Republic of Georgia, who alleged that he had suffered past persecution on account of his religion. Mezvrishvili credibly testified to instances of abuse on account of his belief as a Jehovah's Witness, but the Immigration Judge found that Mezvrishvili lacked adequate knowledge about or commitment to that faith and denied Mezvrishvili's application for asylum. Mezvrishvili petitions for review of a decision of the BIA, which cryptically discounted the finding of the Immigration Judge that Mezvrishvili lacked sufficient religious knowledge, but affirmed the order of the Immigration Judge. Because the BIA and the Immigration Judge failed to give reasoned consideration to Mezvrishvili's application and make adequate findings, we grant the petition for review, vacate the decisions of the BIA and the Immigration Judge, and remand for proceedings consistent with this opinion.

## I. BACKGROUND

On April 13, 2002, Mezvrishvili arrived at Miami International Airport in route to Nicaragua from the Republic of Georgia. He requested asylum in the United States and was found to have a credible fear of persecution. On April 23, 2003, Mezvrishvili filed his application for asylum.

At a hearing before the Immigration Judge on September 20, 2004, Mezvrishvili testified that he became a Jehovah's Witness in February 2000 and had been persecuted in the Republic of Georgia because of his religion.

2

Mezvrishvili testified that, in August 2000, an official denied Mezvrishvili's application for a job as an investigator with the Georgian police and told Mezvrishvili that he had been rejected because of his religious affiliation. In September 2000, Mezvrishvili and a group of Jehovah's Witnesses were on buses headed to a large meeting of Jehovah's Witnesses and were stopped by police in civilian clothes who broke the windows of the buses and beat and stoned individuals, including Mezvrishvili. In November 2000, people in civilian clothes accosted Mezvrishvili and a group of Jehovah's Witnesses at the entrance to a Jehovah's Witness meeting place, seized all the religious literature carried by the group, and physically and verbally abused the group. In March 2001, two uniformed Georgian police officers took Mezvrishvili from in front of his apartment to a location outside of the city and beat him for 15 to 20 minutes. The officers told Mezvrishvili that he was beaten because he was a Jehovah's Witness, instructed him not to report the beating, and left him alone outside the city.

Mezvrishvili testified that, after he arrived in the United States, he attended Kingdom Hall about 20 times, but had not attended since February 2004, could not name any of the leaders of his Kingdom Hall, and had not been baptized. Mezvrishvili provided no documents in support of his application for asylum, although the Immigration Judge considered a Country Report and a Religious Freedom Report prepared by the U.S. State Department, both of which described

3

persecution of Jehovah's Witnesses in the Republic of Georgia. The Immigration Judge asked Mezvrishvili fifty-nine questions about the religious doctrine of Jehovah's Witnesses and determined that Mezvrishvili had only "some rudimentary knowledge of the theology of the Jehovah's Witnesses."

The Immigration Judge denied Mezvrishvili's application for asylum, withholding of removal, and relief under the Convention Against Torture. The Immigration Judge found Mezvrishvili to be credible and to have described "abuse . . . sufficient to be prosecutory [sic] in nature," but found that Mezvrishvili "ha[d] not met his burden to present a preponderance of credible probative evidence to establish that he is in fact an individual who adopted the Jehovah's Witness faith in his homeland of Georgia and suffered in that country as a result." The Immigration Judge "d[id] not view [Mezvrishvili] as adequately possessed of fundamental knowledge regarding the denomination to be an individual who for four and a half years ha[d] been a student of the denomination" and noted Mezvrishvili's "failure to provide any corroboration whatsoever regarding his proclaimed attendance at Kingdom Hall after his arrival in [the United States]."

Mezvrishvili appealed the decision of the Immigration Judge to the BIA, and the BIA adopted and affirmed the decision of the Immigration Judge, although it noted that it "agree[d] with [Mezvrishvili's] argument on appeal that he should not be held to western standards of religious knowledge." On June 1, 2006, we denied

4

Mezvrishvili's motion to stay his removal, but this appeal continues unabated. See Weng v. U.S. Att'y Gen., 287 F.3d 1335, 1337 (11th Cir. 2002).

## II. STANDARDS OF REVIEW

We review the decision of the BIA and the decision of the Immigration Judge, to the extent it has been adopted by the BIA. Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review legal issues de novo, Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001), and "administrative fact findings under the highly deferential substantial evidence test," Adefemi v. Ashcroft, 386 F.3d 1022, 1026 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035, 125 S. Ct. 2245 (2005). When the BIA or the Immigration Judge has failed to "give 'reasoned consideration'" or "make 'adequate findings,'" Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006) (quoting Morales v. INS, 208 F.3d 323, 328 (1st Cir. 2000)), we remand for further proceedings because we are "unable to review" the decision, id. at 1377.

## III. DISCUSSION

Mezvrishvili presents two main arguments in his petition for review. First, Mezvrishvili argues that the Immigration Judge erroneously found that he failed to establish past persecution on a statutorily protected ground. Second, Mezvrishvili argues that the Immigration Judge violated his right to due process because the Immigration Judge relied on facts not supported by the record and failed to ask

5

Mezvrishvili why corroborating documents had not been produced.  Because we conclude that the BIA and the Immigration Judge failed to render a reasoned decision as to whether Mezvrishvili suffered past persecution on a statutorily protected ground, and vacate the decisions of the BIA and the Immigration Judge, we do not reach Mezvrishvili's due process argument.

"To establish asylum based on past persecution, the applicant must prove (1) that she was persecuted, and (2) that the persecution was on account of a protected ground," Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006), such as religion, 8 U.S.C. § 1101(a)(42)(A).  Mezvrishvili argues that he established past persecution on account of his religion through his credible testimony about the individuals who assaulted him because he was a Jehovah's Witness.  The problem with our evaluation of this argument comes when we attempt to review the decisions of the BIA and the Immigration Judge.

The BIA and the Immigration Judge did not give reasoned consideration to Mezvrishvili's application or make adequate findings for at least three reasons. First, the BIA did not coherently explain the extent to which it adopted the decision of the Immigration Judge.  The BIA "agree[d] with [Mezvrishvili's] argument on appeal that [Mezvrishvili] should not be held to western standards of religious knowledge," but did not articulate whether or how its agreement limited its adoption of the decision of the Immigration Judge.

6

Second, after the Immigration Judge found Mezvrishvili's testimony about beatings and other abuse credible, the Immigration Judge failed to offer a reasonable explanation as to why he found that Mezvrishvili had not "adopted the Jehovah's Witness faith in his homeland of Georgia and suffered in that country as a result." The Immigration Judge did not make a "clean" adverse credibility determination, Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) (internal quotation marks omitted), and relied instead on his view that Mezvrishvili had exhibited insufficient commitment to the faith while in the United States and had insufficient knowledge of the religious doctrine of Jehovah's Witnesses. This explanation is unreasonable.

The issue to be decided in the asylum hearing is whether the applicant suffered religious persecution, not whether he displays the knowledge of a seminarian during a "mini-catechism administered at the hearing." Yan v. Gonzales, 438 F.3d 1249, 1255 (10th Cir. 2006). "[D]etailed knowledge of [religious] doctrine may be irrelevant to the sincerity of an applicant's belief [because] a recent convert may well lack detailed knowledge of religious custom," id. (citing Ahmadshah v. Ashcroft, 396 F.3d 917, 920 n.2 (8th Cir. 2005)), and "many deeply religious people know very little about the origins, doctrines, or even observances of their faith," Iao v. Gonzales, 400 F.3d 530, 534 (7th Cir. 2005). Because an asylum applicant must establish that "the persecution was on

7

account of a protected ground," Silva, 448 F.3d at 1236 (emphasis added), "even an individual who does not subscribe to a certain religion, but is nonetheless . . . persecuted on account of others' perception that he does, may well be able to establish a religious persecution claim under a theory of 'imputed religion' analogous to the 'imputed political opinion' theory," Rizal v. Gonzales, 442 F.3d 84, 90 n.7 (2d Cir. 2006). See Najjar, 257 F.3d at 1289 (discussing imputed political opinion theory).

Mezvrishvili's commitment to the Jehovah's Witness faith while in this country and whether he adopted that faith in his homeland of Georgia show little about whether he suffered in Georgia on account of his religion. "Both history and common sense make amply clear that people can identify with a certain religion, notwithstanding their lack of detailed knowledge about that religion's doctrinal tenets, and that those same people can be persecuted for their religious affiliation." Rizal, 442 F.3d at 90; see also Ahmadshah, 396 F.3d at 920 n.2 ("If [petitioner] has shown that [his would-be persecutors] would believe that he was [of a particular religion], that is sufficient basis for fear of persecution under the law."). "This is not to say that questions about religious doctrine are never relevant in assessing an asylum applicant's credibility in claiming religious persecution," Rizal, 442 F.3d at 90, because "a purported Christian who didn't know who Jesus Christ was, or a purported Jew who had never heard of Moses, would be instantly suspect," Iao,

8

400 F.3d at 534, but the Immigration Judge did not make an adverse credibility finding.

Third, the Immigration Judge assumed facts not in the record when he held Mezvrishvili to a level of religious devotion that Mezvrishvili did not assert. The Immigration Judge found that Mezvrishvili's actions while in the United States were "inconsistent with a strong commitment to [the Jehovah's Witness] faith" and that Mezvrishvili's "rudimentary knowledge of the theology of the Jehovah's Witnesses" was inconsistent with four and a half years of "reading and studying the denomination's principals and beliefs." The record shows that Mezvrishvili testified that he had been a follower of the Jehovah's Witness faith for four and a half years and had read some literature on his own, but contains no evidence that Mezvrishvili had represented that he had a strong commitment to the faith or that he had undertaken four and a half years of active study.

## IV. CONCLUSION

Because the BIA and the Immigration Judge failed to render a reasoned decision in consideration of Mezvrishvili's credible testimony, we are unable to review the denial of Mezvrishvili's application for asylum. We **GRANT** Mezvrishvili's petition for review, **VACATE** the decisions of the BIA and the Immigration Judge, and **REMAND** for further proceedings consistent with this opinion.

9