

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2009

# Zheng v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1682

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Zheng v. Atty Gen USA" (2009). *2009 Decisions*. Paper 2035.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2035

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1682
_____

QING ZHENG,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A96-021-273)
Immigration Judge:  Honorable Richard Randall Ozmun

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 24, 2008

Before:  RENDELL, GREENBERG and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Filed: January 14, 2009)
_____

OPINION OF THE COURT
_____

PER CURIAM

Qing Zheng petitions for review of the Board of Immigration Appeals' ("BIA")

final order of removal.  For the following reasons, we will grant his petition.

## I.

Zheng, a native and citizen of China, arrived in the United States in 2003 when he was seventeen years of age. He was taken into custody and charged as removable on the grounds that he did not possess valid entry documents and, as a minor with no means of support, was likely to become a public charge. Zheng concedes removability, but seeks asylum, withholding of removal and relief under the Convention Against Torture ("CAT") on the grounds that he fears persecution and torture for his practice of Falun Gong.

Before the IJ, Zheng testified that he had attended two Falun Gong meetings in 2002. At the first of these meetings, held at a Mr. Zhou's house, he gave Zhou his name, address and telephone number. At the second of these meetings, Zhou provided basic instruction and distributed Falun Gong videotapes and other training materials. Soon thereafter, Zheng learned that Chinese authorities raided Zhou's home, arrested him and beat him "almost to death." Authorities also confiscated Zhou's booklet containing all the members' names and addresses. Zheng testified that he learned the foregoing from a Mr. Chang, another participant in the meetings, who told Zheng to be "extra careful." Zheng also learned that another participant in the meetings, a Sha Lin, also had been arrested and beaten. When Zheng told his parents, they told him it was risky to stay in China and made arrangements for him to go abroad. His other testimony is discussed where relevant below.

2

The IJ, in a written decision, denied Zheng's claims. With regard to Zheng's asylum claim, the IJ concluded both that Zheng was ineligible for asylum and that, even if Zheng were eligible, he would deny the asylum claim in the exercise of his discretion. The BIA affirmed without opinion.[1]

## II.

The IJ concluded that Zheng was ineligible for asylum because (1) he found Zheng's testimony implausible (but not otherwise incredible), (2) Zheng failed to offer certain corroborating evidence, (3) Zheng produced no evidence that Chinese authorities are searching for him, and (4) Zheng's family has remained without harm in China. His decision makes clear that he based his ruling on all of these circumstances, and he set forth none of them as a discrete reason for denying Zheng's claims. The IJ also

---

[1] We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a)(1). Because the BIA affirmed the IJ's order without opinion, we review the decision of the IJ. See Jishiashvili v. Att'y Gen., 402 F.3d 386, 391-92 (3d Cir. 2005). We review IJs' factual findings, including credibility determinations, for substantial evidence and must uphold them unless "'any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. at 392 (quoting 8 U.S.C. § 1252(b)(4)(B)). Nevertheless, such "'deference is not due where findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record.'" Id. at 393 (citations omitted). Aliens are eligible for asylum if they show, inter alia, a well-founded fear of persecution on a protected ground. See Shardar v. Att'y Gen., 503 F.3d 308, 312 (3d Cir. 2007). Even if an alien is eligible for asylum, an IJ may deny asylum in the exercise of his or her discretion. See Dia v. Ashcroft, 353 F.3d 228, 234 n.1 (3d Cir. 2003). We review the IJ's discretionary denial of asylum for abuse of that discretion. See 8 U.S.C. § 1252(b)(4)(D); Kalubi v. Ashcroft, 364 F.3d 1134, 1137 (9th Cir. 2004). On appeal, Zheng argues only that the denial of his asylum claim was in error and does not mention his claims for withholding of removal or relief under CAT, so those two latter claims are waived. See Lie v. Ashcroft, 396 F.3d 530, 532 n.1 (3d Cir. 2005).

concluded that a discretionary grant of asylum was not warranted in part for these same reasons. After reviewing the record, we believe that the first and last of these reasons are not supported by substantial evidence. Accordingly, we must remand for the BIA to reconsider Zheng's claims. See Liu v. Ashcroft, 372 F.3d 529, 534 (3d Cir. 2004) (remanding where Court's ruling "fundamentally upsets the balance of facts and evidence upon which [the] agency's decision is based").

The IJ relied principally on what he characterized as the implausible nature of Zheng's testimony, and cited four respects in which he found that testimony implausible. Each of them lacks adequate support in the record. First, the IJ cited Zheng's "stated minimal involvement" with Falun Gong since coming to this country and concluded that such involvement

> is simply not consistent with what one would expect of an individual who had given up everything—his family, country, and way of life in order to be able to practice Falun Gong—and then not to do so. Clearly, the practice of Falun Gong within the Chinese community in this country is public, legal, and not uncommon—yet the respondent claims that despite his best efforts, he has been unable to associate with others in the practice of Falun Gong. This Court finds the Respondent's claim to be highly implausible and improbable.

(IJ Decision at 7-8; A.43-44.) This conclusion mischaracterizes Zheng's claim. His claim is not merely that he left China because he wanted to freely practice Falun Gong. Instead, he claims that he left China out of fear that Chinese authorities, who confiscated a Falun Gong membership booklet with his personal information and arrested and beat two other members of the group with which he practiced, would arrest and beat him as

4

well.  Indeed, the IJ did not even mention Zheng's testimony about the confiscation of the membership book containing his name and address, which would appear highly relevant to his fear of future persecution.  See Shardar, 503 F.3d at 317 (remanding where BIA ignored relevant evidence and misconstrued the nature of petitioner's claim).  Moreover, the IJ's assumption that Zheng should have been able to "associate with others in the practice of Falun Gong" lacks record support.  Zheng lives in Pittsburgh, and he testified to his efforts to locate other Falun Gong practitioners in that community.  The record is devoid of any evidence regarding the "public" and "not uncommon" practice of Falun Gong within the Chinese community in Pittsburgh, or anywhere else in the United States for that matter, and provides no support for the IJ's assumption that Zheng should have been able to locate other local practitioners of Falun Gong.

Second, the IJ found implausible Zheng's testimony regarding his aunt and his former boss, both of whom Zheng testified he has lived with in the United States.  Zheng testified that he told both of them that he practices Falun Gong but that he practices alone in his room rather than in front of them because he would feel "odd, weird" doing so.  (A.99.)  From this, the IJ concluded:

> [T]his Court finds as implausible the Respondent's testimony that the people he has lived with, his aunt and former boss, have never observed him practice Falun Gong.  The Respondent's provided rationale was that he considered it "inappropriate" to practice Falun Gong in their presence at their home.  Yet, surely he must have made them aware of the reason for his asserted fleeing from China, as well as the basis of his asylum claim—that being to practice Falun Gong—and to avoid being persecuted for doing so.

5

> To find as "inappropriate" the practice of a discipline for which one has completely altered his life, quite simply, defies logic.

(IJ Decision at 8; A.44.) Once again, the IJ mischaracterized Zheng's testimony. Zheng never testified that he thought it "inappropriate" to practice in their homes (indeed, he never used that word). Instead, he testified that he <u>had</u> told his aunt and former boss that he practices Falun Gong, but that he felt "odd, weird" practicing in front of them as opposed to privately in his room. There is nothing inherently implausible in someone feeling "odd, weird" about actually practicing rituals in front of relative strangers, and there is no record support for the IJ's apparent assumption that Falun Gong cannot be practiced privately in one's room.

Third, the IJ had "great difficulty with the Respondent's testimony that he doesn't know how the arrangements were made for him to flee China and travel to the United States. He testified that he didn't know if a 'snakehead' was used." (IJ Decision at 8; A.44.) Zheng testified that his parents made arrangements for his transport to the United States and that, although he did not know exactly how the arrangements were made, he followed their instructions. (A.88, 107.) Once again, it is not inherently implausible that the parents of a seventeen-year-old boy in fear for his safety might make arrangements for him to leave the country and that he would follow their instructions without knowing precisely how his parents had made those arrangements.

Finally, the IJ faulted Zheng's "basic and rudimentary" knowledge of Falun Gong. The IJ wrote that Zheng "knew the name of the founder of Falun Gong, and a few of the

6

'basics' of the discipline. He claimed that his lack of more knowledge of the discipline was a result of his destruction of the basic materials provided him and his inability to associate with other practioners [sic] in this country. This court has already indicated the implausibility of the latter assertion." (IJ Decision at 8; A.44.) Applicants for asylum, however, need not display "the knowledge of a seminarian." Mezvrishvili v. Att'y Gen., 467 F.3d 1292, 1296 (11th Cir. 2006). Instead, basic knowledge of the tenets and practice of Falun Gong is sufficient. See Iao v. Gonzales, 400 F.3d 530, 532, 534 (7th Cir. 2005) (granting petition for review where IJ improperly demanded detailed knowledge of Falun Gong). Indeed, the IJ never specified what more about Falun Gong he believed that Zheng should know.

In addition to finding Zheng's claim implausible for these four reasons, the IJ believed that his claim was undercut because his "family remains in China unharmed." (IJ Decision at 9; A.45.) A petitioner's fear of future persecution may be diminished where family members remain behind without harm, but only if those family members are similarly-situated and "there is no individualized showing that petitioner would be singled out for persecution." Lie, 396 F.3d at 537. As explained above, Zheng testified why he believed he would be singled out for persecution (i.e., the confiscation of a Falun Gong membership booklet containing his name and address), but the IJ ignored that testimony. Moreover, Zheng testified that authorities "did not create any trouble for my parents, actually practicing Falun Gong is my personal thing, it has nothing to do with my

7

parents." (A.107.) The IJ ignored this testimony as well, and there is no record support for his apparent assumption that Zheng's parents would face mistreatment for Zheng's own practice of Falun Gong.

For these reasons, the IJ's conclusion that Zheng failed to prove his eligibility for asylum lacks record support. There remains the IJ's ruling that, even if Zheng were eligible for asylum, he would deny that claim in the exercise of his discretion. That decision too was informed by the foregoing considerations. (IJ Decision at 9-10; A.45-46) (evaluating discretion "by considering the entire context of this case" and noting once more that Zheng "has been found to lack veracity in his in-court testimony"). Thus, for the reasons discussed above, we conclude that the IJ abused his discretion in denying asylum on these grounds. See Kholyavskiy v. Mukasey, 540 F.3d 555, 572 n.18 (7th Cir. 2008) (remanding where IJ's discretionary denial of asylum was based on same errors underlying his erroneous ruling that petitioner was ineligible for asylum).[2]

Accordingly, we will grant Zheng's petition for review and remand to the BIA for reconsideration of his claims in light of this opinion.

---

[2]The Government argues that Zheng failed to exhaust this issue because he did not challenge the IJ's exercise of discretion before the BIA. Zheng, however, argued before the BIA that the IJ's implausibility finding lacks record support and that the IJ failed to acknowledge the actual basis of his claim. As explained above, the IJ expressly based his discretionary denial of asylum in part on those same grounds, so we believe that Zheng adequately placed this issue before the BIA. See Lin v. Att'y Gen., 543 F.3d 114, 121 (3d Cir. 2008) (describing our "liberal exhaustion policy") (citations omitted).