**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4128
_____

MENG ZHAO,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-805-239)
Immigration Judge:  Alberto Riefkohl
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 23, 2012
Before:  FISHER, WEIS and BARRY, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 24, 2012)
_____

OPINION
_____

PER CURIAM.

Meng Zhao, a citizen of China, seeks review of a Board of Immigration Appeals

("BIA") decision that upheld the Immigration Judge's ("IJ") denial of asylum,

withholding of removal, and relief under the Convention Against Torture ("CAT").  For

the reasons that follow, we will deny the petition for review.

## I.

Zhao entered the United States in March 2008 as a nonimmigrant B-1 visitor. He overstayed and was charged as removable under 8 U.S.C. § 1227(a)(1)(B). Zhao conceded removability but, in an effort to block removal, claimed that he suffered and would continue to suffer persecution and torture in China on account of his anti-government-corruption political opinion.

At an August 2010 hearing before the IJ, Zhao testified that he was formerly employed as a business manager in the purchasing department of the "Ocean Shangh[a]i Building Linhing Corporation." A.R. at 98. "Originally it was [a] government enterprise," A.R. at 98, but it privatized in August 2004. During the period in which Ocean Shanghai was government-run, Zhao became aware of corruption at the highest levels of the company: the general manager and two associate general managers used company funds to purchase luxury cars and houses, and to "sen[d] their children abroad." A.R. at 99. The embezzlement had a negative impact on Zhao's salary insofar as he "did not get paid on time . . . start[ing] I think in the beginning of year 2003." A.R. at 101.

The situation worsened when the company privatized in August 2004 because the new owners were the three embezzling managers. Layoffs occurred and those employees who remained with the company saw their health insurance, pensions, and other benefits stripped. When, on August 10, 2004, Zhao refused to sign a form consenting to the changes in employment, he was removed from the company building by security guards. The next day, Zhao filed a petition with the city government complaining about the

2

aforementioned corruption. The investigation conducted by the city was fruitless, and Zhao resigned himself to work for the company without benefits.

Inspired by tales of American civic activism, Zhao and his friends eventually "organized a small group [they] called Democratic Anti Corruption Group." A.R. at 109. The group met in private because "in China you don't have freedom of speech." A.R. at 110. The group intended to organize a large scale protest of China's corrupt business culture. Planning stalled when twelve members of the group—including Zhao—were arrested during a meeting on October 25, 2007.

The arrestees were taken "to Fujin City public security bureau detention facility," A.R. at 113, where they were interrogated and accused of practicing Falun Gong. Dissatisfied with Zhao's interrogation responses, the police "beat [him] up"[1] and held him in custody for "five days." A.R. at 116, 117. Zhao was fined 100 yuan for the cost of food provided to him each day of the detention. He was released only because he signed an "admission of wrong doing" and "promised in the future [he would] not attend any form of gathering." A.R. at 117. Zhao went immediately to a hospital for treatment of his injuries. Later, Zhao was fired from his job because of the arrest. Zhao's misfortune did not end there: "afterwards the local resident committee people and police officer from time to time . . . came to [my] home, arrest me. Plus I was required from time to time to report to the police office." A.R. at 119.

---

[1] The IJ was disinclined to hear specific details about the beating, stating: "I'm not the kind of judge that enjoys physical mistreatment, okay." A.R. at 120.

At the end of the hearing, the IJ observed that Zhao's "testimony was obviously a mirror image of what he submitted [in the asylum application]." A.R. at 151. The IJ found Zhao's testimony to be credible but denied his applications for immigration relief. The IJ found the testimony to be insufficiently corroborated, and specifically faulted Zhao for failing to produce "his petition to the mayor" or "his confession letter or proof of the assessed fines for food during detention." A.R. at 70.

In addition, the IJ determined that Zhao did not demonstrate past persecution for three reasons: (1) Zhao "failed to provide evidence of the nexus between his arrest and his political opinion to prove the government knew about his democratic activities," A.R. at 72; (2) Zhao "did not demonstrate [sufficient] severity of his arrest and detention," A.R. at 72; and (3) "even when considering [Zhao's] short detention in conjunction with his economic hardship, the Court finds that [Zhao's] claim still does not rise to the level of past persecution." A.R. at 73. The IJ also determined that Zhao did not demonstrate future persecution because the Chinese government appeared to be unaware of his political agenda. The IJ gave weight to the fact that Zhao's parents remained in China and had "not been arrested or beaten." A.R. at 74. Finally, the IJ determined that Zhao failed to meet the standard for CAT protection.

The BIA dismissed Zhao's appeal, concluding as follows: (1) Zhao's beating in detention was not sufficiently severe; (2) Zhao's alleged persecution was not on account of his anti-corruption political opinion; (3) since Zhao did not satisfy the burden for asylum, he did not satisfy the heavier burden for statutory withholding of removal; and

4

(4) Zhao failed to raise and therefore waived his CAT claim. This petition for review followed.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). When the BIA issues its own written decision, that decision in general circumscribes the scope of our review. However, we look to an IJ's findings of fact or rulings on particular claims when the BIA expressly defers to them. See Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). "We review the facts upon which the BIA's decision rests to ensure that they are supported by substantial evidence from the record considered as a whole, and we will reverse based on a factual error only if any reasonable fact-finder would be 'compelled to conclude otherwise.'" Id. (internal citations omitted). The BIA's legal conclusions are reviewed de novo. Id.

## III.

We conclude that substantial evidence supports the IJ's finding, deferred to by the BIA, that Zhao's political opinion is not "one central reason" for any past or prospective harm. That conclusion alone requires that we deny Zhao's petition for review.[2]

---

[2] We note that although the IJ arguably erred in his corroboration analysis by failing to conduct the three-step inquiry that we set forth in Abdulai v. Ashcroft, 239 F.3d 542 (3d Cir. 2001), and that was eventually codified at 8 U.S.C. § 1158(b)(1)(B)(ii), the BIA did not adopt the IJ's corroboration analysis in reaching its decision. Cf. Garcia v. Att'y Gen., 665 F.3d 496, 502 (3d Cir. 2011) ("[T]he BIA agreed with several of the IJ's findings but did not adopt all of them. Accordingly, we may affirm the BIA's decision only if we find that its stated reasons are correct, as it was the BIA—not the IJ—that

5

To be classified as a refugee and thus acquire eligibility for asylum relief, an aspiring immigrant must demonstrate that he is unable or unwilling to return to his country of origin due to persecution or a well-founded fear of persecution on account of one of the bases enumerated in the Immigration and Nationality Act. See 8 U.S.C. § 1101(a)(42). Because Zhao filed his asylum application after May 11, 2005, the application is governed by the changes to the relevant law brought about by the REAL ID Act. See Kaita v. Att'y Gen., 522 F.3d 288, 296 (3d Cir. 2008). "Under the REAL ID Act standard, an applicant must establish more than that the persecutor is motivated 'in part' by a protected ground." Li v. Att'y Gen., 633 F.3d 136, 142 n.4 (3d Cir. 2011); see also 8 U.S.C. § 1158(b)(1)(B)(i) ("The burden of proof is on the applicant to establish that . . . race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant.").

As we explained in Ndayshimiye v. Attorney General, 557 F.3d 124 (3d Cir. 2009), the term "central," as used in § 1158(b)(1)(B)(i), means "of primary importance, essential, or principal." Id. at 130. We determined that it was reasonable for the BIA to conclude "that Congress, in including the term 'central,' meant to preclude asylum where a protected ground played only an incidental, tangential, or superficial role in persecution." Id.

Here, the record reflects that Zhao was arrested and detained as a suspected Falun

---

provided the final and authoritative 'grounds invoked by the agency.'" (citation omitted)).

6

Gong practitioner, not as an anti-government-corruption activist.[3] Even though Zhao was arrested during a meeting of his so-called Democratic Anti Corruption Group, the meeting's subject matter appears to have been unrelated to the police officers' motivations with respect to Zhao's arrest, detention, and physical mistreatment. Indeed, the affidavit from Zhao's co-arrestee indicates that the police were unaware of the group's political ideology. Thus, substantial evidence supports the BIA's finding that Zhao's political opinion was not one central reason for his alleged mistreatment; Zhao fails to demonstrate that a reasonable adjudicator would be compelled to come to the opposite conclusion. Accordingly, the petition for review will be denied.

---

[3] Zhao argues that "[t]he Immigration Judge's suggestion that the police did not persecute Mr. Zhao for his political beliefs because they questioned him about Falun Gong is illogical because harm subjected based on his imputed support for that group would also constitute persecution on account of a protected ground." Pet'r Br. at 16. We agree with Zhao that a claim for asylum can be rooted in persecution on account of an imputed religious belief. See, e.g., Rizal v. Gonzales, 442 F.3d 84, 90 n.7 (2d Cir. 2006) Mezvrishvili v. Att'y Gen., 467 F.3d 1292, 1296 (11th Cir. 2006). But Zhao made no effort to exhaust a claim of that nature at the agency level. See Lin v. Att'y Gen., 543 F.3d 114, 122 (3d Cir. 2008) ("Out of respect for the administrative process, we will not require the BIA to guess which issues have been presented and which have not."). Nor did the BIA *sua sponte* consider a claim of persecution based on an imputed religious belief. Cf. id. at 126