[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12727
Non-Argument Calendar
_____

Agency No. A087-375-673


SADRIDDIN ASLIEVICH NASRIEV,
NODIRA AHRORKULOVNA BARATOVA,

                                                            Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 7, 2014)

Before PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Sadriddin Aslievich Nasriev and Nodira Ahrorkulovna Baratova, a husband and wife who are citizens of Uzbekistan, petition for review of the final order of the Board of Immigration Appeals ("BIA") adopting and affirming the Immigration Judge's ("IJ's") denial of their applications for withholding of removal and relief under the United Nations Convention Against Torture ("CAT"). On appeal, Nasriev and Baratova argue that the IJ erred in making an adverse credibility determination based on Nasriev's lack of detailed knowledge of his Baptist faith, inconsistencies between Petitioners' written applications and their testimony, and omissions in Nasriev's application for withholding of removal and CAT relief. They also argue that there is a pattern or practice of religious persecution in Uzbekistan and that as Baptists, they would more likely than not be arrested and tortured by Uzbek authorities if forced to return to Uzbekistan. As substantial evidence supports the IJ's and the BIA's findings, we deny the petition.

## I.

When the BIA issues a decision, we review only that decision except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Id. Here, the BIA expressly adopted the IJ's decision and briefly articulated its reasons for doing so. Thus, we review the decisions of both the IJ and the BIA.

2

We review the factual determination that an alien is ineligible for withholding of removal and CAT relief under the highly deferential substantial evidence test, and we will affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1283–84 (internal quotation marks omitted).

> Under the substantial evidence test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision. . . . In sum, findings of fact made by administrative agencies, such as the BIA, may be reversed by this court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings.

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). We review legal determinations de novo, Delgado v. U.S. Att'y Gen., 487 F.3d 855, 860 (11th Cir. 2007), but we review factual findings, including credibility determinations, under the substantial evidence test. Todorovic v. U.S. Att'y Gen., 621 F.3d 1318, 1323 (11th Cir. 2010).

An applicant's testimony, if credible, may be sufficient to sustain his burden of proof in establishing eligibility for relief from removal without corroborating evidence. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006). Conversely, if the applicant relies solely on his testimony, an adverse credibility determination may alone be sufficient to support the denial of his application. Id. If the applicant produces evidence other than his testimony, the IJ must consider

3

that evidence and cannot rely solely on an adverse credibility determination.  Id.
The weaker the applicant's testimony, the greater the need for corroborating
evidence.  Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005).

When making credibility determinations, the IJ must consider the totality of
the circumstances, including the witness's demeanor, candor, and responsiveness,
the inherent plausibility of the account, the consistency among and within all oral
and written statements and other evidence of record, and any inaccuracies and
falsehoods in the statements.  8 U.S.C. §§ 1231(b)(3)(C), 1158(b)(1)(B)(iii);
Todorovic, 621 F.3d at 1324.  These determinations are made "without regard to
whether an inconsistency, inaccuracy, or falsehood goes to the heart of the
applicant's claim."  8 U.S.C. § 1158(b)(1)(B)(iii); Kueviakoe v. U.S. Att'y Gen.,
567 F.3d 1301, 1305 (11th Cir. 2009).

The IJ must offer specific, cogent reasons for an adverse credibility
determination.  Ruiz, 440 F.3d at 1255.  Once such a determination is made, the
burden is on the applicant to show that the IJ's credibility finding was not
supported by specific, cogent reasons or was not based on substantial evidence.  Id.
Even where a petitioner offers tenable explanations for the implausibilities in his
claim, we will not reverse an adverse credibility determination unless those
explanations would compel a reasonable fact finder to reverse.  See Chen v. U.S.
Att'y Gen., 463 F.3d 1228, 1233 (11th Cir. 2006).

4

II.

An alien is entitled to withholding of removal if he can show that if removed, his life or freedom would be threatened in the country of removal because of his race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. § 1231(b)(3)(A); Delgado, 487 F.3d at 860–61.  The burden of proving eligibility for withholding of removal rests with the alien, who must show that it is more likely than not that he would be persecuted or tortured upon being removed.  Delgado, 487 F.3d at 861.

The alien can meet his burden in two ways.  First, he can demonstrate past persecution in his home country based on a protected ground, in which case a rebuttable presumption arises that he has a well-founded fear of future persecution, and the burden shifts to the government to show that conditions in the country have fundamentally changed or that the alien could reasonably relocate within the country of removal and thereby avoid a future threat.  8 C.F.R. § 1208.16(b)(1).  Second, the alien may establish that he more likely than not would be persecuted in the future based on a protected ground, either because the alien would be singled out for persecution or because (1) there is a pattern or practice in the applicant's home country "of persecution of a group of persons similarly situated to the applicant on account of" a protected ground, and (2) "[t]he applicant establishes his or her own inclusion in and identification with such group of persons such that it is

5

more likely than not that his or her life or freedom would be threatened upon return to that country." Id. § 1208.16(b)(2). If the IJ finds that the alien could avoid that future threat by relocating to another part of his home country, the alien cannot demonstrate that it is more likely than not that he would be persecuted or tortured if removed. Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006).

"[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Delgado, 487 F.3d at 861 (alteration in original) (quoting Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005)). In determining whether an alien has suffered past persecution, the IJ must consider the cumulative effects of the alleged incidents. Id. To show a well-founded fear of future persecution, the BIA has required that there be "systemic, pervasive, or organized" persecution of the petitioner's group. See, e.g., In re A-M-, 23 I. & N. Dec. 737, 741 (BIA 2005). Moreover, in assessing the circumstances in a country to determine whether a pattern or practice of persecution exists, the BIA is entitled to rely heavily on country reports prepared by the State Department. See Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1354 (11th Cir. 2009).

In this case, the IJ and the BIA found that Petitioners failed to meet their burden of establishing that it is more likely than not that they would be persecuted upon return to Uzbekistan based on their religious beliefs. Substantial evidence

6

supports the IJ's and the BIA's adverse credibility determinations and their findings that Petitioners did not meet their burden to establish past persecution or a well-founded fear of future persecution. The IJ provided specific, cogent reasons to support its adverse credibility determination, and the record does not compel a finding that Nasriev and Baratova were credible.

The IJ cited several reasons behind its adverse credibility determination: (1) Nasriev's inability to provide specific details about his involvement in his church in Uzbekistan, his fellow members in the church, or the church's activities, (2) the lack of corroborating evidence or effort to obtain evidence of Nasriev's involvement in his church in Uzbekistan, (3) the improbability that Nasriev's attackers, even those who did not know him personally, would know the sect of Christianity to which he belonged and would use "Baptist" to insult him, (4) Nasriev's lack of substantive testimony about his alleged persecution, (5) Nasriev's lack of basic knowledge about religious doctrine, (6) the fact that Nasriev and Baratova did not begin attending church immediately upon their entry into the United States, (7) inconsistencies between Nasriev's and Baratova's testimonies, and (8) numerous omissions in Nasriev's application. The record does not compel reversal of the IJ's and the BIA's findings on these matters.

For instance, Nasriev failed to provide specific details about his conversion from Islam to Christianity and about his religious activities in Uzbekistan. He also

failed to offer any corroborating evidence about his involvement with the Baptist church in Uzbekistan or about other church members.  And his claim that his neighbors used terms like "Baptist dog" to insult him, when those neighbors lived in a remote area of Uzbekistan in which Nasriev claimed resided only about twelve Baptists, was also implausible, as his neighbors most likely would not have an understanding of Christian denominations.  Moreover, Nasriev's testimony regarding his arrest and physical abuse was somewhat inconsistent with his wife's testimony about the same incidents.

Furthermore, during an interview with an asylum officer, Nasriev was unable to name the Gospels and named Moses and Abraham as apostles.  This inability to articulate basic religious doctrine may not undermine the sincerity of Nasriev's faith, but it casts doubt on his credibility regarding his assertion that he has been a proselytizing Baptist for over thirty years.  See Mezvrishvili v. U.S. Att'y Gen., 467 F.3d 1292, 1296 (11th Cir. 2006) (recognizing that a petitioner claiming religious persecution need not demonstrate "the knowledge of a seminarian" at the hearing but that lack of detailed doctrinal knowledge may be relevant to an applicant's credibility even if it is irrelevant to the sincerity of his beliefs).  In addition, Nasriev and Baratova did not begin attending church in the United States for months after entering the country, and their testimony regarding

when they started attending church in this country was inconsistent and also conflicted with the documentary evidence provided by their pastors.

Also undermining Nasriev's credibility is that he omitted information from his application for withholding of removal and CAT relief, such as his prior military service in the Soviet army, his arrest in the United States for petit theft, the fact that he used an alias when arrested, and the fact that he had assistance in preparing his application. Although Petitioners argued that these omissions were the result of Nasriev's misunderstanding of the application questions, we cannot say that such an explanation compels reversal of the adverse credibility finding. See Chen, 463 F.3d at 1233 ("[W]hile [the petitioner]'s explanations of the implausible aspects of his claim are tenable, we cannot say, especially given the relative lack of corroborating evidence, that these explanations would compel a reasonable fact finder to reverse the IJ's credibility determination.").

Substantial evidence also supports the IJ's and the BIA's determinations that Nasriev and Baratova did not meet their burden of demonstrating that they would be singled out for persecution upon return to Uzbekistan or that a pattern or practice of persecuting Baptists or other evangelical lay Christians exists in Uzbekistan. Evidence of country conditions shows that Uzbekistan is generally a place of religious tolerance, and although Baptists and evangelical Christians have difficulty registering their churches with the government and may face arrest or

9

fines for worshipping with unregistered churches, such difficulty does not rise to the level of persecution.  In any event, substantial evidence supports the IJ's and the BIA's conclusions that Nasriev and Baratova could relocate safely and reasonably to Tashkent, the capital of Uzbekistan, as Nasriev previously studied at a university in Tashkent without suffering persecution for his faith.  Thus, substantial evidence supports the IJ's and the BIA's determinations that Petitioners failed to meet their burden of establishing eligibility for withholding of removal.

### III.

To be eligible for CAT relief, an applicant must establish that it is more likely than not that he would be tortured if removed to the proposed country of removal.  8 C.F.R. § 1208.16(c)(2); Cole v. U.S. Att'y Gen., 712 F.3d 517, 532 (11th Cir.), cert. denied, 134 S. Ct. 158 (2013).  For purposes of CAT:

> Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1).  Furthermore, "[t]orture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or

10

degrading treatment or punishment that do not amount to torture." Id. § 1208.18(a)(2).

Substantial evidence supports the IJ's and the BIA's determinations that Petitioners here did not meet their burden of showing that it is more likely than not that they would be tortured upon return to Uzbekistan at the hands of or with the acquiescence of a public official. Petitioners relied on the same facts to support their applications for withholding of removal and for protection under CAT, and at worst, the record evidence shows that Petitioners may face fines or imprisonment for worshipping in an unregistered church in Uzbekistan, which is not tantamount to torture. Petitioners have therefore failed to meet their burden of establishing eligibility for CAT relief.

Upon careful review of the entire record on appeal and of the parties' appellate briefs, we deny the petition.

PETITION DENIED.