[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11711
Non-Argument Calendar

_____

Agency No. A216-274-390

KENNETH CRISTIAN AZURDIA-HERNANDEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 4, 2020)

Before JORDAN, NEWSOM, and EDMONDSON, Circuit Judges.

PER CURIAM:

Kenneth Azurdia-Hernandez ("Petitioner"), a native and citizen of Guatemala, petitions for review of the order of the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ").  The IJ's decision denied asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  Because we conclude that the BIA and the IJ failed to give reasoned consideration to some of Petitioner's claims, we grant the petition for review, vacate the BIA's decision, and remand the case to the BIA for further consideration.

I.    Background

Petitioner sought asylum and withholding of removal based on his membership in a particular social group ("immediate family members of his mother Orquidia Tamara Hernandez-Garcia") and based on his religion (Evangelical Christian).[1]

---

[1] The IJ concluded that Petitioner's proposed family-based particular social group is cognizable under the Immigration and Nationality Act; that issue is not before us on appeal.

Petitioner alleged that in June 2012, he and his mother, Orquidia, were victims of a robbery theatrically staged by a "gang/cartel" called El Cartel del Golfo. The supposed robbers beat Petitioner and Orquidia and attempted to stab Petitioner in the stomach. During the attack, members of the cartel arrived, shouted Orquidia's name, and shot at the robbers, causing the robbers to flee. The next day, a member of the cartel came to Petitioner's family home and returned Petitioner's and Orquidia's stolen identification. Petitioner contends that the cartel staged the robbery -- and the cartel's rescue of Petitioner and Orquidia -- so that Petitioner and Orquidia would be indebted to the cartel.

In early 2013, the cartel approached Orquidia -- who worked as a bank manager -- at her place of work. In exchange for the cartel's having saved Orquidia and Petitioner, the cartel demanded that Orquidia launder $10,000 a day for them. The cartel threatened to harm Orquidia or Petitioner if Orquidia refused to cooperate. Orquidia agreed to comply with the cartel's demands but told them she could only process transactions up to the legal limit of $3000 per day. The cartel told Orquidia to find a way to process more money; Orquidia refused to do so because of her religion. The cartel told Orquidia that they trusted her because of her religion. In November 2013, the bank terminated Orquidia's employment -- the bank had discovered the money-laundering transactions.

3

Thereafter -- in 2014 and 2015 -- the cartel demanded that Petitioner and Orquidia continue working for the cartel in other ways. The cartel told Petitioner and Orquidia that -- because of their religion -- the cartel trusted them not to cheat or steal from the cartel. The cartel also wanted Petitioner to work as a bodyguard, given his "height and body structure." During this time, the cartel beat Petitioner at least once and several times threatened to harm Petitioner and Orquidia if they refused to comply. Petitioner and Orquidia agreed to work for the cartel by sorting the cartel's money but refused the cartel's demands that they store weapons and drugs in their home.

In a written decision, the IJ denied Petitioner relief. The IJ first found that Petitioner testified credibly and that his testimony was both internally consistent and consistent with the documentary evidence in the record. The IJ then concluded that Petitioner was statutorily ineligible for asylum. In pertinent part,[2] the IJ determined that Petitioner failed to demonstrate (1) a nexus between his mistreatment and a statutorily protected ground, and (2) that the Guatemalan government was unable or unwilling to protect him. Then given the failure to satisfy Petitioner's burden of establishing eligibility for asylum, the IJ concluded

---

[2] The IJ also determined that the mistreatment Petitioner suffered did not rise to the level of persecution. Petitioner appealed this determination to the BIA. The BIA, however, made no ruling on this issue; the BIA decided based on other dispositive grounds.

Petitioner now seeks to raise the issues of persecution and future fear in his appeal in this Court. Because these issues were not reached by the BIA, they are not properly before us. See Gonzalez v. U.S. Att'y Gen., 820 F.3d 399, 403 (11th Cir. 2016).

that Petitioner had also failed to meet the higher burden of proving eligibility for withholding of removal.  The IJ also determined that Petitioner was ineligible for CAT relief because Petitioner had failed to show that he would be tortured by or with the acquiescence of a public official.  The BIA agreed with the IJ's reasoning and dismissed Petitioner's appeal.

II.    Standard of Review

We review both the BIA's decision and the IJ's decision in this case to the extent the BIA adopted the IJ's reasoning.  See Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009).  We review de novo legal determinations of the BIA.  Id.  And we review fact determinations "under the highly deferential substantial evidence test" whereby "[w]e must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Adefemi v. Ashcroft, 386 F.3d 1022, 1026-29 (11th Cir. 2004) (en banc) (quotations omitted).  To reverse a fact determination, we must conclude "that the record not only supports reversal, but compels it."  Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2005).

"To enable our review, the [BIA and the IJ] must give 'reasoned consideration' to an applicant's claims and make 'adequate findings.'"  Ali v. U.S.

Att'y Gen., 931 F.3d 1327, 1333 (11th Cir. 2019) (quotations omitted) (citing Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1374 (11th Cir. 2006)).  We stress that although the IJ and the BIA must consider all evidence introduced by the applicant, it need not address specifically each claim or piece of evidence presented.  Id.  We must, however, "be left with the conviction that the [agency] has heard and thought about the case and not merely reacted."  Id. (quotations and alterations omitted).

"[T]he agency does not give reasoned consideration to a claim when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record."  Jeune v. U.S. Att'y Gen., 810 F.3d 792, 803 (11th Cir. 2016).  When the BIA or IJ "has failed to give reasoned consideration or make adequate findings, we remand for further proceedings because we are unable to review the decision."  Mezvrishvili v. U.S. Att'y Gen., 467 F.3d 1292, 1295 (11th Cir. 2006) (quotations and citations omitted).

III.    Discussion

An alien may obtain asylum if he is a "refugee," that is, a person unable or unwilling to return to his country of nationality "because of persecution or a well-

6

founded fear of persecution on account of" a protected ground, including membership in a particular social group or religion.  8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1).  The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence.  Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005).

A. Causal Connection

To demonstrate persecution "on account of" a protected ground, an alien must show that a protected ground "was or will be at least one central reason for persecuting the applicant."  8 U.S.C. § 1158(b)(1)(B)(i).

Petitioner contends that the BIA and the IJ erred in concluding that he failed to establish the required causal link between the mistreatment by the cartel and Petitioner's religion.  In making that determination, the IJ said only these words:

> Additionally, Respondent alleges that he was harmed because of his religion as an Evangelical Christian.  However, Respondent testified that the gang members indicated that they trusted him and his mother because of their religion, which indicates to the Court that the cartel members had no intention of harming him or his mother on account of their religious beliefs.  They viewed their status as Evangelical Christians as a positive attribute rather than as a negative attribute which would not lead the cartel members to harm them in any way.

7

The BIA agreed with the IJ's conclusion that Petitioner failed to show that a protected ground was a "central reason" for the alleged harm.  The BIA discussed only the IJ's reasons for denying Petitioner's particular social group claim and made no express mention of Petitioner's religion-based claim.

We conclude that the BIA and the IJ failed to give "reasoned consideration" to and make "adequate findings" about Petitioner's religion-based persecution claim.  The IJ's determination (that the cartel held a positive view of Petitioner's religion and that the positive view made it unlikely that the cartel would harm Petitioner) ignores and is unreasonable in the light of Petitioner's credible testimony that the cartel actually did physically beat Petitioner and did threaten Petitioner and Orquidia with serious bodily harm if they refused to comply with the cartel's demands -- demands that Petitioner and Orquidia labor for the cartel. Moreover (although we do not decide this issue today), we cannot rule out -- as a matter of law -- that an asylum applicant might demonstrate religion-based persecution based on evidence that he was targeted for forced labor or some other oppressive treatment because the persecutor perceived some positive attribute (honesty, diligence, or such) associated with the persecuted person's religion that would serve the persecutor's goals.

On appeal to the BIA, Petitioner argued that the IJ's decision was contrary to Petitioner's own testimony.  Petitioner also challenged the logic of the IJ's

8

conclusion that because the cartel trusted Petitioner based on his religion, the cartel would not harm Petitioner. That the BIA neither addressed Petitioner's arguments nor made express mention of Petitioner's religion-based claim casts significant doubt about whether the BIA heard or thought about Petitioner's religion-based persecution claim and the pertinent evidence.

### B. Government Unable or Unwilling to Protect

As an alternative ground for denying Petitioner asylum, the IJ also concluded that Petitioner failed to show that the Guatemalan government was unable or unwilling to protect him. The IJ provided this explanation, which was adopted by the BIA:

> Respondent testified that his mother reported the robbery to the police, but did not report any of the cartel's attempts to have them launder money. Additionally, Respondent made no attempt to report any of the threats from the cartel, and thus has not given the Guatemalan government the opportunity to demonstrate that they are unable or unwilling to protect him from his feared persecution.

To prove eligibility for asylum, an applicant must demonstrate that the alleged persecution was inflicted by a government official or by persons that the government is unable to control. Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010). As noted correctly by the IJ, an applicant may establish the

9

government's inability or unwillingness to control a private actor "by presenting evidence that he reported the persecution to local government authorities or that it would have been useless to do so." See id. at 950 (citing Lopez v. U.S. Att'y Gen., 504 F.3d 1341, 1345 (11th Cir. 2007)).

Because we conclude that the BIA's and the IJ's findings on this issue are inadequate, we are unable to review this alternative ground for denying Petitioner asylum. First, in finding that Petitioner and Orquidia failed to report to the police the cartel's money-laundering demands, the IJ misstated the contents of the record. The record shows that Petitioner testified that Orquidia did go to the police after the cartel demanded that she launder money for them, but that the police refused to help her. The IJ provided no explanation for not crediting this portion of Petitioner's otherwise credible testimony.

The BIA's and IJ's decisions also failed to address or make factual findings about Petitioner's contention and testimony that the police were involved with the cartel and, thus, that it would have been useless to report the cartel's ongoing threats to the police. "Although the failure to report persecution to local government authorities generally is fatal to an asylum claim, . . . it would be excused where the petitioner convincingly demonstrates that those authorities would have been unable or unwilling to protect [him], and for that reason [he] could not rely on them." Lopez, 504 F.3d at 1345. Given Petitioner's testimony

10

about police corruption, that Petitioner took no steps to seek protection from the police -- by itself -- might not be enough to defeat his claim for asylum.  See id. (remanding for further consideration where the BIA concluded only that petitioner had failed to seek protection from law enforcement and failed to address petitioner's claim that those authorities were unable or unwilling to protect her).

For these reasons, we conclude that the BIA and the IJ failed to give reasoned consideration to all the evidence and claims presented by Petitioner and failed to make adequate findings.  We are thus unable to review meaningfully the agency's denial of Petitioner's application for relief.  Accordingly, we grant the petition for review, vacate the BIA's decision, and remand the case for further proceedings.

PETITION GRANTED; VACATED AND REMANDED.