[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15531
Non-Argument Calendar
_____

Agency No. A206-145-471


FU FENG LIN,

                                                                      Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                      Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 25, 2016)

Before HULL, MARCUS and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Fu Feng Lin, a native and citizen of China, petitions for review of a decision affirming the denial of his applications for asylum and withholding of removal under the Immigration and Nationality Act and the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment. 8 U.S.C. §§ 1158(b), 1231(b)(3). The immigration judge and the Board of Immigration Appeals found that Lin's testimony was too conclusory and lacked corroboration to establish that he was a refugee who had been persecuted based on his religious activities. Lin described two incidents in which he was arrested, abused, and imprisoned by Chinese officials for participating in unregistered churches. Lin also submitted letters that confirmed his version of events and official reports stating that local officials persecuted members of unregistered churches. Because Lin's testimony was sufficiently detailed and was corroborated by his documentary evidence to support his application for relief, we grant Lin's petition and remand for the agency to consider whether the harms inflicted on Lin constituted persecution and whether there is a reasonable possibility that he will singled out for persecution if he returns to China.

We review the decision of the Board to determine whether it "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Shi v. U.S. Att'y Gen.*, 707 F.3d 1231, 1234 (11th Cir. 2013). "Under this standard, reversal requires finding 'that the record not only supports reversal, but

2

compels it.'" *Id.* (quoting *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003)). We review *de novo* the legal conclusions of the Board. *Mendoza*, 327 F.3d at 1287 n.6. Because the Board adopts the findings of the immigration judge, we review the decision of the immigration judge. *Shi*, 707 F.3d at 1234.

An alien must prove that he is eligible for asylum or withholding of removal. The alien's testimony may be sufficient to satisfy his burden of proof if his testimony "is credible, is persuasive, and refers to specific facts sufficient to demonstrate that [he] is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). To be a refugee, the alien must have a well-founded fear that he will face persecution upon removal to his native country on account of his race, religion, nationality, membership in a particular social group, or political opinion. *Id.* §§ 1101(a)(42), 1158(b)(1), 1231(b)(3). If "the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.* § 1158(b)(1)(B)(ii).

An alien who provides testimony that is credible, consistent with his written application, and contains details about his persecution need not produce corroborating evidence to establish that he is a refugee. *See Niftaliev v. United States Attorney General*, 504 F.3d 1211 (11th Cir. 2007). In *Niftaliev*, the alien's graphic description of the systematic discrimination and abuse inflicted by

3

Ukrainian officials established that he suffered past persecution on account of his ethnicity and political activities. *Id.* at 1217. Niftaliev, who had been ostracized and penalized for being part Azerbaijani and part Ukrainian, was mistreated by government officials for protesting the national mistreatment of minorities. *Id.* at 1213–14. Niftaliev substantiated his claim of persecution by describing, consistent with his application, protests, beatings, arrests, searches, interrogations, being imprisoned for 15 days during which he was given little food or water and threatened with being shot, and continuing to be stalked, threatened, and assaulted after relocating to Argentina. *Id.* at 1214, 1217.

The record compels that we reverse the finding that Lin's testimony was too conclusory to establish that he was a refugee. *See* 8 U.S.C. § 1158(b)(1)(B)(ii). Consistent with his application, Lin testified extensively about twice being arrested, beaten, detained, and intimidated by Chinese officials because of his participation in unregistered Christian house churches. Lin testified that, on November 20, 2012, seven police officers barged into a church service in Hua Chen's home, shoved Lin and the other participants to the ground, handcuffed and searched them, and transported them to a police station. Lin recounted that two interrogating officers said there was no "ghost or God" and accused him of participating in an "evil cult," that he was imprisoned for five days in a detention facility, and that he feared contacting members of his disbanded church, so he

4

prayed in secret. And Lin recalled that, on March 9, 2013, armed officers stormed into a service in Lin Ming's home and handcuffed and arrested the ten parishioners. At headquarters, two officers threatened Lin, kicked and punched him to force him to stand during questioning, and denied him food, water, or sleep for 48 hours. For more than a month thereafter, Lin was held in a detention center and beat severely every two to three days until he was released on bail on April 23, 2012. Afterwards, officers threatened to rearrest Lin and break his hands, arms, and legs if he returned to the "evil cult," ordered him to return weekly to account for his activities and his associates, and surveilled him at home and at work. Lin's detailed accounts of being arrested, interrogated, insulted, battered, imprisoned, and monitored supported his claim that he was punished for and prohibited from worshipping in an unregistered house church.

The immigration judge also disregarded evidence that substantiated Lin's claims of mistreatment. *See Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1280 (11th Cir. 2009). For example, the immigration judge relied on a statement in the 2012 China International Religious Freedom Report that local officials did not interfere with unregistered house churches, yet the immigration judge overlooked statements that officials punished unregistered groups by confiscating and destroying their property, assaulting and injuring participants, and imprisoning leaders and attendees. The immigration judge also relied on general statements in a

5

State Department report that expressed little concern for religious persecution in the Fujian Province, but those general statements failed to rebut Lin's specific testimony about his personal experiences. *See Gaksakuman v. U.S. Att'y Gen.*, 767 F.3d 1164, 1171 (11th Cir. 2014). And the immigration judge discounted newspaper reports about the mistreatment of Catholics in the Fujian Province on the ground that Lin is Protestant, without considering Lin's testimony, reports from the China Aid Association, and a report about a Chinese regulation that connects persecution to a church's failure to register, not its denomination.

Other documents in the record also corroborate Lin's accounts of persecution and bias against unregistered churches. The 2012 and 2013 Country Reports stated that citizens were beaten, deprived of sleep, and suffered other harms for their religious practices. Likewise, statements in the 2012 China International Report established that officials referred to Protestant groups unaffiliated with state-sanctioned churches as "evil cults."

The immigration judge discounted letters from Lin's ministers on the ground that they were written by interested witnesses, but, in so doing, failed to account for the ministers' unique ability to chronicle the raids and the mistreatment of church members. *See Ruiz v. Gonzales*, 479 F.3d 762, 766 (11th Cir. 2007). Chen stated that seven officers interrupted his family church service, forced the participants to the ground where they were handcuffed and searched, and

6

transported them for questioning. Chen, like Lin, was told by officers that his church was a "cult," was beaten and kicked and denied nourishment and sleep, was imprisoned for three months, and was released on bail with a warning not to plan or to attend future "cult church gatherings." Ming's letter recounted his meeting with Lin and Lin's first visit to Ming's house church on March 9, 2013, when officers disrupted the service and handcuffed and arrested the participants. Thereafter Ming suffered harms similar to Lin. Ming reported being kicked by two officers to force him to stand during his interrogation, being denied food, water, and sleep until he was moved to a detention center, being imprisoned for two months, and being released on bail under instructions to inform officers weekly about his whereabouts and his companions.

We grant Lin's petition for review. Lin's testimony, which the immigration judge found credible, was sufficiently detailed and corroborated with documentary evidence to establish that he was a refugee. We remand for the agency to consider whether the harms inflicted on Lin amounted to persecution and whether there is a reasonable possibility that he will singled out for persecution if he returns to China.

We **GRANT** Lin's petition for review.