[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12004
Non-Argument Calendar

_____

Agency No. A209-763-039

OSMAR IVAN LOPEZ ALVARADO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 18, 2021)

Before WILSON, JORDAN, and GRANT, Circuit Judges.

PER CURIAM:

Osmar Lopez Alvarado petitions for review of the Board of Immigration

Appeals' order affirming the immigration judge's denial of his applications for

asylum, withholding of removal under the Immigration and Nationality Act, and

protection under the United Nations Convention Against Torture. Because we agree that Lopez Alvarado was not eligible for these forms of relief, we deny his petition for review.

I.

Lopez Alvarado, a native and citizen of Guatemala, applied for admission to the United States from a port of entry between the United States and Mexico on October 31, 2016. Because he did not possess valid entry documents, the Department of Homeland Security charged him with removability. Lopez Alvarado conceded that he was removable, but applied for asylum, statutory withholding of removal, and protection under CAT. In support of his applications, he claimed that he had been and likely would be persecuted in Guatemala due to his membership in a particular social group, and that he was afraid of being hurt or killed if forced to return. He described an instance where he had been approached by gang members and asked to join their gang; when he refused, they told him to think it over or else "it would go bad" for him. When he refused a second time, they told him to "start saying [his] good-byes to the world." Those encounters frightened him, and prompted him to flee to the United States.

After holding a hearing, the immigration judge denied his applications for relief. The immigration judge first determined that Lopez Alvarado's proposed social group—young male Guatemalans opposed to gang violence who resist those

2

activities for moral and religious reasons—was not viable based on earlier decisions of the Board of Immigration Appeals.  This meant that Lopez Alvarado was not eligible for asylum or statutory withholding of removal.  Turning to Lopez Alvarado's request for relief under CAT, the immigration judge found that Lopez Alvarado had not shown that he would be tortured with the consent or acquiescence of public officials if forced to return to Guatemala.  The immigration judge denied Lopez Alvarado's requests for relief and ordered him removed.

Lopez Alvarado appealed the immigration judge's decision to the Board.  In his brief to the Board, he argued that the immigration judge should have recognized his membership in a particular social group because his proposed group shared common and immutable characteristics.  He also argued that it was more likely than not that he would be tortured if forced to return to Guatemala; he said he had been tortured before, and that authorities had been no help.

The Board affirmed the immigration judge's order without an opinion. Lopez Alvarado petitioned this Court for review, arguing that the immigration judge erred in denying his applications for relief.

## II.

We review our subject matter jurisdiction de novo.  *Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1221 (11th Cir. 2006).  We are precluded from reviewing a final order of removal if a petitioner failed to exhaust his administrative remedies.

8 U.S.C. § 1252(d)(1).  To exhaust a claim, a petitioner must raise the core issue before the Board and "set out any discrete arguments he relies on in support of that claim."  *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 800 (11th Cir. 2016).

Where we have jurisdiction and the Board expressly adopts the immigration judge's opinion or reasoning, we review the immigration judge's opinion.  *Lopez v. U.S. Att'y Gen.*, 914 F.3d 1292, 1297 (11th Cir. 2019).  We review legal conclusions de novo and factual findings under the substantial evidence test.  *Id.*

### III.

To establish asylum eligibility, a noncitizen must show he is a "refugee" under the Act.  8 U.S.C. § 1158(b)(1)(A).  A "refugee" is someone who is unable or unwilling to return to his home country due to persecution or a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion."  *Id.* § 1101(a)(42)(A).  An applicant for statutory withholding of removal must similarly establish that his life or freedom would be threatened in the country of removal because of "race, religion, nationality, membership in a particular social group, or political opinion."  *Id.* § 1231(b)(3)(A).

A "particular social group" has three defining characteristics: (1) immutability; (2) particularity; and (3) social distinction.  *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 404 (11th Cir. 2016).  The proposed group must share a

common and immutable characteristic, be discrete and defined with particularity, and be "socially distinct within the society in question." *Id.* (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)). The risk of persecution alone does not create a particular social group recognized under the Act. *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1198 (11th Cir. 2006).

Lopez Alvarado contends that his proposed social group—young male Guatemalans opposed to gang violence who resist those activities for moral and religious reasons—is cognizable under the Act. The government, for its part, argues that we lack jurisdiction to consider Lopez Alvarado's claim. It contends that Lopez Alvarado failed to exhaust administrative remedies because he did not specifically challenge the immigration judge's finding that his proposed group was not "socially distinct" when appealing to the Board.

Although Lopez Alvarado did not use precise legal terminology in his brief to the Board, he provided sufficient information to exhaust his claim. Lopez Alvarado was not required to put forth well-developed arguments; he only needed to set out enough information to allow the Board to review, assess, and correct the errors he alleged. *Jeune*, 810 F.3d at 800. In his brief, Lopez Alvarado argued that the immigration judge erred in finding him ineligible for political asylum and withholding of removal, contending that he was a member of a particular social group that shared immutable characteristics. According to Lopez Alvarado, it was

5

a "problem" to not recognize as cognizable under the Act the "particular group" of men who do not believe "in being members of the gangs." Because his brief raised the "core issue" of whether he was a member of a particular social group, he exhausted available administrative remedies for this claim. *Id.*

The government points out that Lopez Alvarado's brief to the Board focused only on the immutability factor, and did not discuss social distinction. True, but that does not mean that he failed to exhaust this claim. A petitioner fails to exhaust administrative remedies only when he raises a new claim before us that he did not raise before the Board. *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015). But Lopez Alvarado makes the same arguments before us that he made in his brief to the Board. Even if he may have missed an important point, that does not mean that we lack jurisdiction to consider his argument.

Moving to the merits of his claim, we agree with the immigration judge that Lopez Alvarado is not a member of a "particular social group" cognizable under the Act. The immigration judge relied on *Matter of S-E-G-* when concluding that Lopez Alvarado's proposed group did not qualify. *See* 24 I. & N. Dec. 579 (BIA 2008). In that case, the Board rejected the respondents' proposed social group of "Salvadoran youths who have resisted gang recruitment, or family members of such Salvadoran youth." *Id.* at 582. The Board concluded that the proposed group lacked "particularity" because it was a "potentially large and diffuse segment of

society." *Id.* at 585. It also concluded that the group lacked social visibility—clarified in a later case to mean "social distinction"—because there was no evidence to indicate that Salvadoran youth who resist joining gangs would be perceived as a group by society at large. *Id.* at 586–88; *see also Matter of M-E-V-G-*, 26 I. & N. Dec. at 233.

The social group Lopez Alvarado proposes—young Guatemalan males who resist gang activity based on personal values—is analogous to the group the Board rejected in *Matter of S-E-G-*. *See* 24 I. & N. Dec. at 582. Lopez Alvarado did not show that this proposed group is particular or socially distinct; in fact, all he provided was general evidence about gang violence in Guatemala and his own testimony that he resisted joining the gang. But that evidence does not show that his proposed group would actually be perceived as a group by society at large, or that it was not too large and diffuse a segment of society to be cognizable under the Act. *Id.* at 588.

Lopez Alvarado attempts to limit the scope of his proposed group by narrowing it to young Guatemalan males who resist gang membership "based upon moral and religious grounds." But that still does not show how his proposed group shares a characteristic that would "generally be recognizable by others in the community." *Id.* at 586. Even if his group was based on an immutable characteristic, immutability is just one of three defining characteristics necessary to

make out a particular group. *See Gonzalez*, 820 F.3d at 404. And because he did not show that his proposed group was particular or socially distinct, the immigration judge did not err in denying his applications for asylum and statutory withholding of removal.

Lopez Alvarado also argues that the immigration judge erred in finding him ineligible for relief under CAT, contending that his personal testimony and the country reports he provided show that he would be tortured if forced to return to Guatemala. An immigration judge may consider country reports in assessing a CAT claim, but those reports are only reliable to the extent they address the specific question raised by the applicant. *Gaksakuman v. U.S. Att'y Gen.*, 767 F.3d 1164, 1171 (11th Cir. 2014). To be eligible for relief under CAT, an applicant must show that it is more likely than not that he "would be tortured if removed to the proposed country of removal." *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020) (quoting 8 C.F.R. § 208.16(c)(2)). For an act to constitute torture, it must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* (quoting 8 C.F.R. § 208.18(a)(1)). Acquiescence requires that the official breach its responsibility to intervene; an official does not acquiescence to torture where the official actively, albeit unsuccessfully, tries to combat the alleged torture. *Id.* at 1293–94.

Here, substantial evidence supported the immigration judge's finding that Lopez Alvarado did not demonstrate that he was likely to suffer torture at the hands of public officials if forced to return to Guatemala. Lopez Alvarado put forth no evidence that torture would be inflicted with the consent or acquiescence of public officials. *Id.* at 1293. Though he claims that police "failed to take any action" after he was threatened by gang members and filed a criminal complaint, he provided no evidence to support this contention. Lopez Alvarado argued that the officers' conduct showed acquiescence to the threats of harm because the officers did not contact him within two months of filing his report to update him on their investigation. But he admitted that he never contacted the officers himself, and the police had already told him that they would investigate his claim. In fact, the evidence showed that the officers took his claim seriously by creating a police report and reassuring him that they would search for the culprits. And even if the police were unsuccessful in capturing his culprits, a public official's inability to successfully apprehend an individual does not demonstrate acquiescence to harm inflicted. *Id.* at 1294.

Lopez Alvarado also points to country conditions evidence showing that Guatemala struggles with corruption by public officials. But Lopez Alvarado never connected that evidence to his own individual situation. Put differently, Lopez Alvarado did not show how country conditions evidence could overcome

9

the agency's finding that the evidence *particular to him* showed that public officials did not acquiesce in the gang members' threats of harm.  A CAT applicant must show that he—individually—is more likely than not to be singled out for torture by public officials.  *Id.* at 1293.  Lopez Alvarado made no such showing, so substantial evidence supported the agency's denial of his CAT protection claim.

*    *    *

We **DENY** Lopez Alvarado's petition for review.