[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14163
Non-Argument Calendar

_____

Agency No. A208-976-212

JOSUE ERNESTO LEIVA-HERNANDEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 16, 2021)

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Josue Leiva-Hernandez seeks review of the Board of Immigration Appeals's (BIA) final order affirming the Immigration Judge's (IJ) denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT).

Leiva-Hernandez, a native and citizen of El Salvador, entered the United States on April 9, 2016. He was issued a Notice to Appear by the Department of Homeland Security, which charged him as removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted or paroled. At a hearing on May 2, 2017, Leiva-Hernandez admitted the allegations and conceded the charge.

In March 2017, Leiva-Hernandez filed an application for asylum and withholding of removal based on his membership in a particular social group, and for CAT relief. According to his application, Leiva-Hernandez witnessed four gang members murder a taxi driver in La Libertad, El Salvador. After the murder, Leiva-Hernandez ran away to a mountain. He did not look to see if the gang members followed him, but he knows that the gang members know his name. As part of his application, Leiva-Hernandez's mother submitted a declaration confirming his story. She also claimed that she was fearful for her son because she

2

knew local authorities would not protect him from the gang.  She claimed that Leiva-Hernandez should not come back because she thought he would be murdered by the gang.

With his application, Leiva-Hernandez submitted a United States Department of State 2016 Human Rights Report for El Salvador (Country Report) and a United Nations High Commissioner report (UNHCR Report).  The reports noted that organized criminal elements, including gangs and drug traffickers, were significant perpetrators of violent crimes in El Salvador.  The reports further stated that while the government has enacted laws banning gangs and increasing sentences for gang-related crimes, weaknesses and corruption in the El Salvadoran security forces and the judiciary resulted in a high level of impunity for crimes.

At his merits hearing, Leiva-Hernandez stated that his asylum and withholding-of-removal claims were based on his membership in a particular social group, specifically "witnesses of criminal acts by gang organizations in La Libertad, El Salvador."[1]  He argued that he was unable to return to El Salvador

---

[1] To establish asylum eligibility, the noncitizen must show (1) past persecution on account of a statutorily listed protected ground, or (2) a well-founded fear that the statutorily protected ground will cause future persecution.  *Li Shan Chen v. U.S. Att'y Gen.*, 672 F.3d 961, 964 (11th Cir. 2011) (per curiam).  Protected grounds include "race, religion, nationality, membership in a particular social group, or political opinion."  INA § 101(a)(42)(B), 8 U.S.C. § 1101(a)(42)(B).  Similarly, under the withholding-of-removal provision of the INA, a noncitizen shall not be removed to a country if his life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.  INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A).

because he would suffer persecution for being part of this particular social group. Leiva-Hernandez claimed that the country conditions supported his arguments because the police and government in El Salvador could not control what was going on in their country.

The IJ issued an oral decision completely denying Leiva-Hernandez's application. As to Leiva-Hernandez's application for asylum and withholding of removal, the IJ found that his proposed particular social group was not cognizable because it lacked particularity and was not sufficiently discrete. Additionally, the IJ found that Leiva-Hernandez failed to establish a nexus between any harm and a protected ground. Next, the IJ denied Leiva-Hernandez's application for CAT protection, finding that there was no evidence in the record to show that Leiva-Hernandez was tortured in the past or that he would likely be tortured by or at the instigation of, or with the consent or acquiescence of, a public official or a person acting in an official capacity.

---

A group is cognizable as a particular social group if it satisfies three requirements. First, members of the group must share a "common characteristic other than their risk of being persecuted, and that characteristic must be immutable or fundamental to a member's individual conscience or identity." *Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1342 (11th Cir. 2019) (per curiam) (internal quotation mark omitted). Second, "the group must have sufficient social distinction." *Id.* And third, the group must be "defined with particularity, meaning it must be discrete and have definable boundaries, and not be amorphous, overbroad, diffuse, or subjective." *Id.* at 1343 (internal quotation marks omitted).

Leiva-Hernandez appealed the IJ's decision to the BIA. He claimed that he had alleged enough to support his asylum and withholding of removal claims. Specifically, he argued that the IJ failed to properly explain why his proposed particular social group was not immutable or socially distinct. Leiva-Hernandez also argued that he sufficiently demonstrated a nexus between his proposed particular social group and his claim of persecution. As to his claim for CAT relief, Leiva-Hernandez argued that his testimony and the reports he submitted satisfied his burden of proof that it was more likely than not that he would be persecuted and tortured in El Salvador.

In a single-member decision, the BIA affirmed the IJ's denial of Leiva-Hernandez's claims. The BIA cited the IJ's opinion and agreed with the IJ that Leiva-Hernandez's particular social group was not cognizable because it was not defined with particularity, socially distinct, or composed of members who shared a common immutable characteristic. In making its determination, the BIA cited its decision in *Matter of M-E-V-G-*, 26 I & N. Dec. 227 (BIA 2014). The BIA also found no error by the IJ in finding a lack of nexus between Leiva-Hernandez's proposed particular social group and his fear of harm. *See Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1158 (11th Cir. 2019) (explaining that under the "nexus requirement" for applications for asylum or withholding of removal "a noncitizen must prove he suffered persecution 'on account of' a protected basis"). The BIA

found that because Leiva-Hernandez did not establish eligibility for asylum, he could not meet the higher burden of proof for withholding of removal.

Next, the BIA concluded that Leiva-Hernandez did not establish eligibility for CAT protection. It noted Leiva-Hernandez's claim that the El Salvadoran government consented or acquiesced to torture because it was aware of the torture and was unable to prevent it, but also noted that a government did not acquiesce to torture where it tried, even if not entirely successfully, to combat it. To this end, it accepted the IJ's findings that the reports Leiva-Hernandez submitted demonstrated that the El Salvadoran government was attempting to combat gang violence. The BIA also agreed with the IJ that evidence of the general possibility of torture did not establish that it was more likely than not that Leiva-Hernandez would be targeted.

On appeal, Leiva-Hernandez argues that the IJ and BIA erred in determining that his proposed particular social group was not cognizable under the INA. Leiva-Hernandez also claims that the BIA erred in determining that he did not meet his burden of showing a nexus between fear of future persecution and a protected ground. Leiva-Hernandez further argues that he was denied due process when the IJ and the BIA failed to adequately consider his claims for asylum and withholding of removal. Last, Leiva-Hernandez contends that the BIA erred in

6

denying his application for CAT relief where the evidence of gang violence in El Salvador was enough to support his claim.

I.

First, we consider Leiva-Hernandez's argument that his proposed particular social group was cognizable under the INA.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts or explicitly agrees with the IJ's opinion. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). Where, as here, the BIA agrees with the IJ's reasoning, we will also review the IJ's decision to the extent of that agreement. *Id.*

Before we consider the merits of a case, however, we must determine whether we have jurisdiction. We review our subject matter jurisdiction de novo. *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015). We lack jurisdiction to review final orders in immigration cases unless the applicant has exhausted all administrative remedies available as of right. INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); *Indrawati*, 779 F.3d at 1297. An applicant fails to exhaust his administrative remedies with respect to a particular claim when he does not raise that claim before the BIA, even where the BIA sua sponte addresses the issue. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250–51 (11th Cir. 2006) (per curiam). Where an applicant fails to exhaust an issue that is dispositive of his

application for relief, we cannot review other issues related to that application, as we would be providing an advisory opinion. *Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1290–91 (11th Cir. 2014).

Here, we lack jurisdiction to consider whether the IJ and BIA erred in concluding that Leiva-Hernandez's proposed particular social group was not cognizable because he did not exhaust his administrative remedies as to that issue. *See Indrawati*, 779 F.3d at 1297. The IJ found that Leiva-Hernandez's proposed particular social group was not cognizable because it lacked particularity and it was not sufficiently discrete, as is required to establish eligibility for asylum or withholding of removal. *See Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1342 (11th Cir. 2019) (per curiam). In his brief to the BIA, Leiva-Hernandez challenged the IJ's decision that his proposed particular social group was not socially distinct, however, he failed to also address the IJ's finding that his proposed particular social group lacked particularity. Because Leiva-Hernandez failed to challenge a decision by the IJ that was dispositive of his claims for asylum and withholding, *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 405 (11th Cir. 2016) (per curiam), he failed to exhaust his administrative remedies. *See Indrawati*, 779

F.3d at 1297.   While we are sympathetic to Leiva-Hernandez's situation, we cannot address his claims here as we do not have jurisdiction.[2]

## II.

Next, Leiva-Hernandez argues that he was denied due process because: (1) the IJ, after determining that his particular social group was not cognizable, failed to examine the remaining elements of his asylum claim; (2) the BIA's analysis regarding whether his particular social group was cognizable and whether there was a nexus "lacked rigor and broke with the Board's own precedents"; and (3) the IJ's and BIA's erroneous findings that he did not demonstrate a nexus caused him substantial prejudice.

In petitions for review of BIA decisions, we review constitutional challenges de novo.  *Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338, 1341 (11th Cir. 2003) (per curiam).  We retain the ability to review constitutional claims or questions of law associated with a petition for review.  INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D); *see Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1195–96 (11th Cir. 2008).  We review de novo alleged legal errors, such as whether the agency failed to give reasoned consideration to an issue.  *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 874 (11th Cir. 2018).

---

[2] We decline to address Leiva-Hernandez's arguments regarding nexus because doing so would require us to render an advisory opinion in light of his lack of exhaustion of his claims regarding the cognizability of his proposed particular social group.  *See Malu*, 764 F.3d at 1290–91.

The BIA and IJ must give "reasoned consideration" to a petition for relief from removal. *Id.* While the agency must consider all the evidence submitted, it is well established that the IJ and BIA are not required to specifically address each claim the petitioner made, or each piece of evidence presented. *Indrawati*, 779 F.3d at 1302. Additionally, if an issue was never presented to the BIA, then it cannot fail to give that issue reasoned consideration. *Id.* at 1303; *see also INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (explaining that "agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach").

Individuals in deportation proceedings are entitled to due process of law under the Fifth Amendment. *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010) (per curiam). In the context of immigration proceedings, due process requires that individuals be given notice and an opportunity to be heard. *Id.* To establish a due process violation, a petitioner must show both a deprivation of liberty without due process and substantial prejudice. *Id.* To establish "substantial prejudice," the petitioner must show that, "in the absence of the alleged violations, the outcome of the proceeding would have been different." *Id.* If an individual fails to raise procedural due process arguments that the BIA has power to review, however, we do not have jurisdiction to hear the claim on appeal as it would be unexhausted. *Bing Quan Lin*, 881 F.3d at 868 ("Where a procedural due process

10

claim properly falls within the immigration courts' power to review and provide a remedy, the claim must be exhausted before it can be considered by [the Court of Appeals].").

We lack jurisdiction to consider Leiva-Hernandez's claim that the IJ denied him due process by failing to fully consider the elements of his asylum claim because he did not exhaust his administrative remedies as to that issue. *Id.*; *see also Indrawati*, 779 F.3d at 1297. The BIA has the power to address and correct due process arguments, like this one, relating to deficiencies in an IJ's analysis. However, on appeal to the BIA, Leiva-Hernandez never argued that the IJ denied him due process in failing to consider all of the elements of his asylum claim. Therefore, this claim is unexhausted and not properly before us. *Bing Quan Lin*, 881 F.3d at 868 (explaining that procedural due process claims must be exhausted but clarifying that "those constitutional claims raised for the first time in this Court that address issues beyond the power of the BIA to address in adjudicating an individual's case may not require exhaustion").

Additionally, Leiva-Hernandez's argument that the BIA denied him due process by failing to adequately consider his claim regarding whether he established a nexus fails. We have jurisdiction to hear this due process claim because it would be "facially nonsensical" for Leiva-Hernandez to make this argument to the BIA before it even issues a decision. *Indrawati*, 779 F.3d at 1299.

11

Regardless this claim fails because the IJ and the BIA did not need to reach or consider if Leiva-Hernandez established a nexus after they made the dispositive findings that his proposed particular social group was not cognizable. *See Bagamasbad*, 429 U.S. at 25. And Leiva-Hernandez cannot show substantial prejudice by any failure of the BIA or the IJ in considering his nexus and fear of future persecution claims because the determination that his particular social group was not cognizable was dispositive of his application for relief. *Id.*; *Garcia v. Att'y Gen.*, 329 F.3d 1217, 1222 (11th Cir. 2003) (per curiam).

Accordingly, we dismiss Leiva-Hernandez's petition as to his claim that the IJ denied him due process in its cognizability determination, and we deny his petition as to his claim that the BIA denied him due process in failing to adequately consider the nexus element of his claims for relief.

IV.

Last, Leiva-Hernandez argues that that neither the IJ nor the BIA properly considered the record evidence in denying him CAT relief.

In petitions for review of BIA decisions, we review factual determinations under the substantial evidence test and conclusions of law de novo. *Gonzalez*, 820 F.3d at 403. Under the substantial evidence test, we view the evidence in the light most favorable to the BIA's decision and draw all reasonable inferences in favor of that decision. *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1230

12

(11th Cir. 2007).  We will affirm the "BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Id.*  The record must compel a contrary conclusion to warrant reversal.  *Id.*  The mere fact that the record may support a different conclusion is not sufficient to justify a reversal of administrative findings.  *Id.*

To be eligible for CAT relief, an applicant must show that it is more likely than not that he would be tortured if returned to the proposed country of removal.  8 C.F.R. § 1208.16(c)(2); *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020).  Additionally, he must show that the torture would be by or with the consent or acquiescence of a public official or person acting in an official capacity.  8 C.F.R. § 1208.18(a)(1); *Lingeswaran*, 969 F.3d at 1293.  Acquiescence requires that a government be aware of the activity constituting torture and thereafter breach its responsibility to intervene.  8 C.F.R. § 1208.18(a)(7); *Lingeswaran*, 969 F.3d at 1293.  A government does not acquiesce to torture in circumstances where it actively attempts, albeit not entirely successfully, to combat the alleged torture.  *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1243 (11th Cir. 2004).

In assessing a CAT claim, the IJ or BIA may consider episodes of past torture, widespread human rights abuses within the proposed country of removal, and other relevant country conditions evidence.  8 C.F.R. § 1208.16(c)(3).  General

13

or isolated evidence of torture or mistreatment is insufficient to show that a petitioner is more likely than not going to be subjected to such treatment. *Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1324 (11th Cir. 2007). While an IJ may rely on country reports produced by the U.S. State Department, these reports are reliable only to the extent that they address or are relevant to the specific question raised by an applicant for CAT relief. *Gaksakuman v. U.S. Att'y Gen.*, 767 F.3d 1164, 1171 (11th Cir. 2014).

Here, the BIA's conclusion that Leiva-Hernandez is not entitled to CAT relief is supported by substantial evidence.[3] While the reports Leiva-Hernandez submitted with his application demonstrate that gang violence is prominent in El Salvador, they also show that the El Salvadoran government is working to combat such violence, albeit not entirely successfully. The BIA correctly considered these and other facts in the record and recognized that a government does not acquiesce to torture just because its efforts to stop such torture are not completely successful. *See Reyes-Sanchez*, 369 F.3d at 1243. Because the record and our precedent do not compel a contrary conclusion, we must affirm the BIA as to this issue.

---

[3] To be eligible for CAT relief, an individual has to prove both (1) that it was more likely than not he would be tortured and (2) consent or acquiescence by the government. *Lingeswaran*, 969 F.3d at 1293. The BIA concluded that Leiva-Hernandez failed to establish either of these requirements. Thus, if either of the BIA's determinations here are supported by substantial evidence we must affirm.

For the forgoing reasons, Leiva-Hernandez's petition is in part dismissed and denied in part.

**PETITION DISMISSED IN PART, DENIED IN PART.**